**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Raymond P. Moore**

Civil Action No. 12-cv-02666-RM-KLM

MAP, a Disabled and Incompetent Person, and
CORINA S. SKINNER, his Guardian, Parent and Next Friend,

      Plaintiffs,

v.

BOARD OF TRUSTEES FOR COLORADO SCHOOL FOR THE DEAF AND BLIND,
COLORADO SCHOOL FOR THE DEAF AND BLIND,
LOUIS TUTT, Individually and in his Official Capacity as Principal for the Colorado School for
the Deaf and Blind, and
DOES 1-10, who are unknown persons,

      Defendants.

---

## ORDER

---

This matter is before the Court on the August 21, 2013 Recommendation of United States

Magistrate Judge Kristen L. Mix (ECF No. 72) ("Recommendation One"), the November 27,

2013 Order and Recommendation of Judge Mix (ECF No. 118) ("Recommendation Two"), and

the April 28, 2014 Recommendation of Judge Mix (ECF No. 163) ("Recommendation Three").

## I.  BACKGROUND

Plaintiff MAP, the son of Plaintiff Corina S. Skinner, is visually impaired with severe

learning disabilities.  He attended Colorado School for Deaf and Blind ("Defendant School") as a

residential student.  Defendant School is organized as a "body corporate" and "has for its object

the education of the children of the state who, by reason of the impairment of their sense of

hearing or sight, cannot be advantageously educated in the other schools or educational

institutions of the state."  (ECF No. 72 at 2.)  Defendant Board of Trustees (the "Board") is a

governmental entity within the Colorado Department of Education.  Defendant Louis Tutt ("Defendant Tutt") was the principal of Defendant School during the time MAP was assaulted as described below.  A variety of unknown individuals, Does 1-10, were also named as defendants.

On several occasions prior to December 2009, Plaintiffs allege, another student ("CS") at Defendant School sexually assaulted Plaintiff MAP on the premises of Defendant School.  On May 5, 2011, CS met with a Defendant School employee and confessed that from 2009 to 2011 he had sexually assaulted five students while on Defendant School grounds, including Plaintiff MAP.  Barbara Meese, then and the current principal of Defendant School, reported the matter to the Colorado Department of Human Services, which then contacted the police.  The police launched an investigation.  This investigation revealed considerable confusion among Defendant School personnel as to the existence and meaning of Defendant School policies governing the reporting of criminal or sexual acts by students.  The investigation also revealed that Defendant Tutt did not prepare any incident reports or documentation concerning the sexual assaults.

Plaintiffs stated four claims for relief in their original complaint: (1) Defendant Tutt, in his individual and official capacities, violated 42 U.S.C. § 1983 by failing to adopt policies aimed at preventing sexual assault of Plaintiff MAP; (2) Defendant School and the Board violated 42 U.S.C. § 1983 by failing to adopt policies aimed at preventing sexual assault of Plaintiff MAP; (3) Defendant School and the Board violated Title IX, 20 U.S.C. § 1681-88, by exhibiting deliberate indifference to sexual harassment of Plaintiff MAP, thereby creating a hostile educational environment for Plaintiff MAP; and (4) Defendants violated Title II of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA") by fostering a hostile educational environment that excluded Plaintiff MAP from participation in and the benefits of a public program.

Defendants filed between them two Motions to Dismiss pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure. (ECF Nos. 18 and 19.) Defendants argued that Plaintiffs' § 1983 claims should be dismissed as the Eleventh Amendment and qualified immunity precluded the progress of any civil action. Defendant Tutt further argues: (1) that Plaintiffs' ADA and RA claims against him in his individual capacity should also be dismissed because Defendant Tutt is not a proper party, (2) that Plaintiff MAP, as an incompetent person, cannot sue on his own behalf, and (3) that Plaintiff Skinner, who has not been appointed as a guardian for MAP, cannot sue on MAP's behalf. Plaintiffs' Title IX claim was not addressed in either of Defendants' Motions.

On August 21, 2013, Judge Mix issued Recommendation One, which recommended that Plaintiffs' first, second and fourth claims be dismissed. As to the second claim, the § 1983 claim against Defendant School and the Board, and as to that portion of the first claim alleging a § 1983 claim against Defendant Tutt in his official capacity, the recommendation was for the dismissal to be with prejudice. This ruling was based on a determination that Defendant School was an arm of the State of Colorado, protected by Eleventh Amendment immunity, and not a "person" for § 1983 purposes. This determination also extended to Defendant Board and Defendant Tutt (in his official capacity). No objection was filed with respect to this recommendation.

As to the first claim (§ 1983) against Defendant Tutt in his individual capacity as well as Plaintiffs' fourth claim (ADA and RA claim), Judge Mix recommended that the claims be dismissed without prejudice. The individual capacity § 1983 claim against Defendant Tutt was recommended for dismissal because of a failure to adequately allege violation of a constitutional right sufficient to defeat Defendant Tutt's qualified immunity assertion. The ADA and RA

claims were to be dismissed because "Plaintiffs' claims for creation of a sexually hostile learning environment in violation of the ADA and RA do not allege facts sufficient to state a claim for relief." (ECF No. 72 at 42.) Plaintiffs filed an Objection (ECF No. 75) to Recommendation One, requesting *de novo* review only of Judge Mix's recommendation regarding the § 1983 claim against Defendant Tutt in his individual capacity and Plaintiffs' ADA and RA claims. Defendant Tutt filed a Response (ECF No. 92) opposing the Objection.

Later, Judge Mix entered an Order and Recommendation, Recommendation Two, on scheduling and discovery matters, granting a limited continuance of the deadlines and settings in this matter, and recommending that the trial date and trial preparation conference previously set by the district court be continued accordingly. (ECF No. 118.) Defendant Tutt filed an objection to that Order and Recommendation, objecting to that portion which allowed Plaintiffs to seek discovery from Defendant Tutt as a witness.

On November 22, 2013, Plaintiff filed a Motion for Leave to File a Second Amended Complaint.[1] (ECF No. 113.) Judge Mix recommended that that motion be granted in part and denied in part in Recommendation Three. (ECF No. 163). She recommended that the motion be granted to permit amendment in a variety of ways – including amendment to the earlier ADA and RA claims. She recommended that the motion be denied as to certain other claims on the basis of futility (as well as the reasons set forth in Recommendation One) to the extent that Plaintiffs sought to amend their § 1983 claims against Defendant Tutt in his individual capacity or for injunctive relief against Defendants School and Board. Judge Mix further recommended, *sua sponte*, that all claims against Does 1-10 be dismissed without prejudice, and that they be dropped as defendants from the litigation.

---

[1] A prior motion to amend complaint (ECF No. 103) was filed. Before being ruled upon, it was essentially replaced by the motion to file a second amended complaint.

Plaintiffs objected to Recommendation Three to the extent it recommended denial of the

motion to amend the § 1983 claims as against Defendant Tutt in his individual capacity.  (ECF

No. 166.)  Defendants School and Board objected to Recommendation Three to the extent that it

permitted amendment of the ADA and RA claim.  (ECF No. 171.)

## II.  STANDARD OF REVIEW

"The district judge must determine *de novo* any part of the magistrate judge's disposition

that has been properly objected to." Fed.R.Civ.P. 72(b)(3). Under Rule 72(b)(2), a party's

objection to a Report & Recommendation must be "specific."  "When no timely objection is

filed, the court need only satisfy itself that there is no clear error on the face of the record in

order to accept the recommendation."  Fed. R. Civ. P. 72(b) advisory committee's note; *see also*

*Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) ("In the absence of timely objection, the

district court may review a magistrate's report under any standard it deems appropriate.").

In reviewing a motion to dismiss, the Court must accept all well-pleaded allegations in

the Complaint as true and view those allegations in the light most favorable to the nonmoving

party. *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1149 (10th Cir. 2001),

quoting *Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir.1999).

In *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) (hereinafter *Iqbal*), and *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544 (2007) (hereinafter *Twombly*), the Supreme Court clarified what

constitutes a "well-pleaded fact" for purposes of a Rule 12 analysis. A pleader is not required to

set forth "detailed factual allegations," but must offer more than "labels and conclusions," a

"formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further

factual enhancement." *Iqbal*, 129 S.Ct. at 1949. The cases make clear that it is facts, not

conclusions, that must be pled; "the tenet that a court must accept as true all of the allegations

contained in a complaint is inapplicable to legal conclusions," including "legal conclusion[s] couched as a factual allegation." *Id*. at 1949–50. Moreover, the facts pled must demonstrate a "plausible" claim, that is, one in which the pleader has shown more than just an abstract "possibility" that the defendant has engaged in actionable misconduct. *Id*. One way in which the Court might conduct its analysis is to "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and disregard them. Then, faced with only well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 1950.

Defendants here moved to dismiss the Complaint under both Rule 12(b)(6) and 12(b)(1). A motion to dismiss pursuant to Rule 12(b)(1) may take two forms: a facial attack or a factual attack. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). When reviewing a facial attack on a complaint, the Court accepts the allegations of the complaint as true. *Id*. By contrast, when reviewing a factual attack on a complaint, the Court "may not presume the truthfulness of the complaint's factual allegations." *Id*. at 1003. With a factual attack, the moving party challenges the facts upon which subject-matter jurisdiction depends. *Id*. The Court therefore must make its own findings of fact. *Id*. In order to make its findings regarding disputed jurisdictional facts, the Court "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing." *Id*. (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990); *Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5 (10th Cir. 1987)). The Court's reliance on "evidence outside the pleadings" to make findings concerning purely jurisdictional facts does not convert a motion to dismiss pursuant to Rule 12(b)(1) into a motion for summary judgment pursuant to Rule 56. *Id*.

To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly* at 570); *see also Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations.").

## III. DISCUSSION

*Recommendation One (ECF No. 72)*

Plaintiffs objected to only two parts of Recommendation One. Each of those objections will be addressed below. The Court has reviewed the remainder of Recommendation One, and has concluded that Judge Mix's analysis was thorough and sound, and that there was no clear error of law or abuse of discretion. Thus, the portions of Recommendation One that were not objected to – dismissal with prejudice of § 1983 claims against Defendants School, Board, and Tutt in his official capacity – are hereby adopted.

In Recommendation One, Judge Mix dismissed Plaintiffs' § 1983 claim against Defendant Tutt in his individual capacity based on qualified immunity. More specifically, she found that the qualified immunity defense could not be overcome where Plaintiffs' claim of a constitutional violation was deficient. Judge Mix found the claim deficient because (1) the Fourteenth Amendment does not impose on a state an affirmative obligation to ensure that its citizens are not deprived of life, liberty or property; (2) the "special relationship" exception to the rule is not applicable; and (3) the "danger creation" exception to this rule is equally inapplicable. Plaintiffs' objection was that the danger creation doctrine did apply – under an alternative theory of danger creation. Plaintiffs assert that the Magistrate Judge overlooked this theory.

The danger creation theory "applies only when a state actor affirmatively acts to create, or increases a plaintiff's vulnerability to, or danger from private violence," *Robbins v. Oklahoma*, 519 F.3d 1242, 1251 (10th Cir. 2008) (internal quotations omitted).  This requires, among other things, intentional or reckless affirmative action which shocks the conscience of federal judges.  *Uhlig v. Harder*, 64 F.3d 567, 572-3 (10th Cir. 1995).  But, according to Plaintiffs, this requirement of affirmative action can be satisfied by a failure to implement appropriate policies or training under certain circumstances.  This alternative theory of danger creation is based upon *Sutton v. Utah State Sch. For the Deaf and Blind*, 173 F.3d 1226 (10th Cir. 1999) (hereinafter *Sutton*).  Plaintiffs contend that Judge Mix confined her analysis only to the traditional "affirmative conduct" aspect of the danger creation theory, and thus erred.

In *Sutton*, the Tenth Circuit reversed a district court dismissal of a § 1983 claim which alleged, among other things, that the defendant principal of the school for the deaf and blind "failed to adopt a protective policy and inadequately informed and trained school employees so as to enhance the danger of sexual assault to [plaintiff]."  173 F.3d at 1238.  The Tenth Circuit agreed with the lower court that the defendant did not "create" the danger by directly participating, since there was no evidence of affirmative conduct alleged in the complaint.  That part of the Tenth Circuit's opinion tracks with Judge Mix's reasoning in Recommendation One.  However, the Circuit went on in *Sutton* to discuss whether a viable claim could be stated that "the principal, with deliberate indifference, failed to adequately train school employees or adopt or implement a policy to prevent sexual assaults like those against [plaintiff]."  *Id*. at 1239.  The Circuit found that such a claim could go forward based on the facts of that case, as pled.  Those averments included allegations that James, the child victim of sexual assault, had cerebral palsy, was mentally the age of a three to five year old, was totally blind, and could not speak.  The

8

complaint also included allegations that the assailant was a much larger boy who was not in James' class; that James had told his mother (through sign language) that his genitals had been touched several times by this larger boy in the bathroom; that James' mother personally notified the principal that James had been molested "in the restroom at the school several times;" and that in response to this information, the principal failed to take any action to prevent James from being thereafter repeatedly molested. *Id*. at 1230, 1240.  The Tenth Circuit was persuaded that, on these pled facts, the plaintiff's claims "cannot be dismissed as inadequate in light of the repeated notification to [the principal], as pled, of notice that [the student], with all his impairments, had been subjected to repeated sexual assaults by the much larger boy…[W]e are persuaded that a viable claim that would 'shock the conscience of federal judges' was stated." *Id*. at 241 (omitting cases cited).

Plaintiffs' objection is well taken – to a point.  Judge Mix did not analyze the "alternate theory" danger creation in Recommendation One.  But that does not mean that such theory was adequately pled.

The allegations of the complaint here, reviewed *de novo*, differ from those of *Sutton*. There are no precise factual allegations in the complaint which delineate in any meaningful way what Defendant Tutt knew, when he knew it, whether whatever he knew was focused on MAP or on a risk to him, or how it related to the cause of his injury.  What exists, and all that exists, are general conclusory allegations.  The complaint lacks sufficient facts, as distinct from conclusions, to withstand a motion to dismiss.  *Iqbal* at 678.  The complaint alleges that Defendants had "actual knowledge of several incidents of sexual abuse of students at [Defendant School] by CS" and refers to CS as a "known abuser," but lacks any specific factual allegations to support these conclusions.  Thus, despite the fact that Judge Mix did not address the alternate

theory of danger creation in Recommendation One, her determination that the § 1983 claim as to Defendant Tutt in his individual capacity should be dismissed was correct.  The objection is overruled.

Plaintiff's second objection to Recommendation One is that, contrary to Judge Mix's determination, the complaint did contain adequate allegations of fact concerning exclusion or denial of benefits or services by reason of disability.  The Court has reviewed the complaint *de novo*, and agrees with Judge Mix's determination in this regard for the reasons stated in Recommendation One.  This objection is also overruled.

*Recommendation Two (ECF No. 118)*

Recommendation Two addressed Plaintiffs' Opposed Motion to Continue Trial Date and Modify Scheduling Order (ECF No. 101).  Judge Mix ruled on the aspects of Plaintiffs' motion that concerned the scheduling order and discovery, and further recommended that the Trial Preparation Conference and Jury Trial set in this Court be continued.  (ECF No. 118 at 2-3.)

Defendant Tutt filed an Objection to Recommendation Two, not to the portion recommending that the trial dates be continued, but rather to the order allowing Plaintiffs to "seek discovery from Defendant Tutt as a witness for the sole purpose of pursuing their claims against the other Defendants." (ECF No. 123 at 4.)  In response to this objection, the Court makes the following observations: (1) this portion of Recommendation Two was in fact not a recommendation, but an order on a non-dispositive issue; (2) as Plaintiffs note, "[r]egardless of whether the claims against Mr. Tutt are dismissed, Mr. Tutt is subject to discovery as a fact witness." (ECF No. 127 at 1.)  This Court agrees with Recommendation Two, and adopts it in full.  Defendant Tutt's objection is overruled.

*Recommendation Three (ECF No. 163)*

Recommendation Three addressed Plaintiff's Motion for Leave to File Second Amended Complaint and recommended that it be granted in part and denied in part.  By this Recommendation, Plaintiffs would be allowed to amend their complaint to address more fully the factual basis for their case, to assert the sexual harassment claim in violation of Title IX against Defendants School and Board, to amend their ADA and RA claims, and to drop the § 1983 claims against Defendant Tutt in his official capacity.  But the motion was denied on the basis of futility to the extent that Plaintiffs sought to amend their § 1983 claim against Defendant Tutt in his individual capacity or to amend their § 1983 claim against Defendants School and Board.  Both Plaintiffs and Defendant Tutt filed limited objections to this Recommendation.

As to those portions of the Recommendation Three which were not objected to, the Court concludes that Judge Mix's analysis was thorough and sound, and that there was no clear error of law or abuse of discretion.  Thus, those portions of the Recommendation are adopted.

Plaintiffs' objection requests that this Court overrule Judge Mix's conclusion that Plaintiffs' proposed § 1983 claim against Defendant Tutt is futile.[2]  Plaintiffs objected both to Judge Mix's conclusion that they did not plead affirmative conduct, and also, in the context of

---

[2] Although objecting to that portion of the Recommendation "that Plaintiffs' proposed § 1983 claim against Defendant Tutt is futile" (ECF No. 166 at 2), Plaintiffs' analysis and argument included a section captioned "Plaintiffs' Claim for Injunctive Relief is Adequately Pled." (*Id.* at 20.)  However, the section of the Recommendation to which this responds was addressing only the § 1983 claim against Defendants School and Board.  (ECF No. 163 at 28-30).

  To the extent that Plaintiffs seek to complain about the Magistrate Judge's ruling as it pertains to injunctive relief against Defendants School and Board, the Court overrules any such objection on three grounds.  First, no objection has ever been lodged to the Magistrate Judge's determination in Recommendation One, carried forward in Recommendation Three, that Defendants School and Board are state actors who are not "persons" within the meaning of § 1983.  Second, no objection was ever made as to Recommendation One's recommendation that § 1983 claims against state actors be dismissed with prejudice.  Third, I find and conclude that no clear objection to such issue has clearly been made here in response to Recommendation Three.

  To the extent Plaintiffs somehow seek to leverage the Magistrate Judge's discussion of injunctive relief pertaining to state actors to injunctive relief as it pertains to Defendant Tutt in his individual capacity, the attempt is pointless.  Defendant Tutt no longer is employed by or associated with Defendant School.  Thus, no injunctive relief against him in his individual capacity could have any impact on Defendant School or Defendant Board.

the *Sutton* alternative theory of liability, to Judge Mix's conclusion that the proposed Second Amended Complaint fails to allege an underlying constitutional violation on the part of a state actor who is subordinate to Defendant Tutt.  The legal import of these determinations by Judge Mix is that Defendant Tutt's qualified immunity defense would protect him from liability on the § 1983 claim.

As to the objection relating to affirmative conduct/direct participation, the Second Amended Complaint attempts to re-shape Defendant Tutt's conduct into affirmative acts. However, as Judge Mix noted, "merely placing the word 'affirmative' before each statement does not transform alleged inaction into action."  (ECF No. 163 at 2).  For example, calling a failure to report a sexual assault an "affirmative decision" to give confidentiality priority over mandatory reporting is simply nonfeasance disguised.  On this score, after *de novo* review, the Court agrees with Judge Mix.

Plaintiffs contend, however, that Judge Mix overlooked clear instances of affirmative conduct which are sufficient to support the danger creation theory being relied upon in support of their § 1983 claim.  Plaintiffs identify (i) the affirmative act of admitting to the school a known sexual predator and (ii) participation in a "scheme" and implementation of policies to conceal sexual assaults at Defendant School.  The Court will address each in turn.

As to the "affirmative act" of admitting to the school a known sexual predator, it is true that Recommendation Three does not squarely address this claim.  But Plaintiffs make too much of this alleged omission.

First, in terms of Plaintiffs' second claim for relief, the § 1983 claim against Defendant Tutt in his individual capacity, the danger creation theory alleged does not rely in any way upon affirmative act of admitting CS into the school.  Instead, it is alleged that danger was created by

the affirmative act of giving "priority" to confidentiality over state reporting requirements and allowing "a student sexual predator who had engaged in an act of private violence against MAP to remain at large in the school." (ECF No. 113-1, ¶172). This simply is not a claim which invokes the original admission of CS into the school or even his assignment to the dormitory. And the claim as made was correctly analyzed.

Second, even were I to broaden my view of the Second Amended Complaint and incorporate the danger creation approach advocated by Plaintiffs (admission or dormitory assignment of CS) into the second claim, Plaintiffs' claim would still fail as it does not satisfy the pleading requirements of *Twombly*, *Iqbal*, and their progeny. There are simply insufficient allegations with respect to these "affirmative acts" to state a claim for relief that is plausible on its face as against Defendant Tutt in his individual capacity. With respect to CS's admission to Defendant School and his dormitory assignment, there is too little alleged. There is no allegation as to who made those decisions, when they were made or why. There are not even sufficient allegations that the admission decision was made after MAP was already a student. (*See* ECF No. 113-1 at ¶¶44-47). And there is nothing suggesting that these decisions were directed at MAP specifically as opposed to the "public" (school population) more broadly or that these decisions caused harm which was both immediate as well as of a limited nature and duration. See *Ruiz v. McDonnell*, 299 F.3d 1173, 1183 (10th Cir. 2002). The objection is overruled.

As to the alleged "deliberate scheme" and "policy" to conceal sexual assaults at the school (ECF No. 166 at 4), I find that this was properly considered by Judge Mix. This is the very re-characterization of nonfeasance – failure to report – into some purported affirmative act that was already addressed by the Judge Mix. But again, if I were to put that aside, this approach still fails under *Twombly* and *Iqbal*. There are no allegations that any failure to report which

preceded the assaults on MAP were directed at causing harm to him.  The allegations as to *when* Defendant Tutt acquired knowledge of CS's sexual assaults at the school, *when* his policy and scheme was first implemented, and how that time line relates to the onset of the assaults on MAP are not clearly alleged.  And, Plaintiffs' effort to bridge these gaps is at least misleading.  In their objection, Plaintiffs reference ¶110 of the proposed Second Amended Complaint as solving the referenced difficulty, setting forth the allegation as follows:

> Before CS sexually assaulted [MAP], but after deliberation and with actual knowledge [that] CS was a sexual predator…Tutt decided to continue the policy and procedures he had put in place to cover-up allegations of student-on-student assault.

(ECF No. 166 at 7).  But this is not an accurate recitation of the allegations of ¶110.  That paragraph begins, "Before CS sexually assaulted BPS…."  BPS, another student, was assaulted in February 2010, *after* the assaults on MAP had concluded.  (ECF No. 113-1, at ¶¶42 and 72.)

As to the *Sutton* theory, Judge Mix fully addressed this alternative theory of liability against Defendant Tutt – that he may be found liable for his failure to train staff and failure to adopt policies designed to prevent sexual assaults.  Plaintiffs object, contending that Judge Mix incorrectly analyzed the *Sutton* liability theory.

Judge Mix considered the *Sutton* theory as informed by *Gray v. University of Colorado Hospital Authority*, 672 F.3d 909 (10th Cir. 2012), which provided recent insight into the Tenth's Circuit's view of the requirements of the failure to train theory.  In *Gray*, the Tenth Circuit conducted a lengthy review of the state-created danger theory and directly addressed *Sutton*'s holding that a viable claim could be premised upon a supervisor's failure to train staff, failure to adopt certain policies, or failure to implement certain procedures.  The Tenth Circuit acknowledged its prior holding that the principal could be liable on the facts in *Sutton* "under a theory of supervisory liability, *if* the mother first was able to establish an underlying

14

constitutional violation on the part of the teacher's aide or other state actor." 672 F.3d at 929, n.7 (emphasis in original). The *Gray* court did not view this as a distinction that was contrary to *Sutton*; on the contrary, the Tenth Circuit in Gray "believe[d] *Sutton* recognized the requirement that supervisory liability be premised on an underlying constitutional violation." *Id*.

Judge Mix determined that an underlying constitutional violation by an ill-trained or untrained state actor subordinate to Defendant Tutt was a prerequisite to liability. Examining the proposed complaint in the *Gray* context, Judge Mix found the allegations insufficient under current pleading standards.

Plaintiffs objected to Judge Mix's analysis on two bases. First, Plaintiffs contend that their pleadings establish the requisite constitution violation by a subordinate. Second, and alternatively, they contend that this is unnecessary as *Gray* should be dismissed as mere dicta leaving *Sutton* as controlling. The Court has considered each basis *de novo*.[3]

I agree with Judge Mix's analysis of the adequacy of Plaintiffs' pleadings under *Twombly* and its progeny. I agree that there are insufficient allegations as to specific staff to enable the Court to find the requisite constitutional violation. While there are a plethora of allegations about staff, in this case quantity does not equal quality. By way of example, if the admission into the school of a "known sexual predator" is the point of focus, a litany of questions arise: Who made the admissions decision? Was that person subordinate to Defendant Tutt? Was the conduct of admitting CS directed at MAP? Assuming a constitutional violation, how is that causally related to Defendant Tutt's failure to train? How can it be said that there is inadequate

---

[3] Plaintiffs also discuss the special relationship theory in the analysis section of its objection. As was the case with Plaintiffs' discussion of injunctive relief as against Defendants School and Board, see note 2, above, again I conclude that no proper objection has been made. Further, no objection whatsoever was made as to Recommendation One's original determinations in this regard. Plaintiffs will not be allowed to make no objection to this issue, and then reinsert the issue in a proposed amended pleading in order to revive their opportunity to object.

supervision where the complaint alleges (ECF No. 113-1, ¶55) that there were specific enrollment guidelines in place?

It is not possible to determine who allegedly did what to whom and how it relates to a failure by Defendant Tutt.  Indeed, many of the criticisms of staff relate to events occurring long after the injury to MAP and cannot be causally related.  As Judge Mix did, I thus conclude that "the Court cannot find that Plaintiffs have met the facial plausibility standard required to assert this § 1983 claim against Defendant Tutt for failure to train, failure to adopt certain policies, or failure to implement certain procedures."  (ECF No. 163 at 28.)

As noted, Plaintiffs also urge this Court to treat the teachings of *Gray* as dicta and instead to conclude that conduct which shocks the conscience dispenses with any requirement for affirmative conduct – either by Defendant Tutt or any subordinate.  Again, I disagree.

The Circuit's analysis and discussion in *Gray* is not a stray comment or passing observation.  It was a comprehensive review of the danger creation theory of § 1983 liability.  It is in this context that *Sutton* was discussed.  While the Court does agree that the Circuit's statements in footnote 7 are technically dicta, and stops short of agreeing with the Magistrate Judge that such dicta is in this case binding, I nonetheless agree with and apply the interpretation of *Sutton* described in *Gray*.  To do otherwise would create state liability for private action whenever violence is essentially foreseeable and permit foreseeability to swallow the general rule that a state is generally not responsible for private acts of violence by third parties.  And to the extent that Plaintiffs would seek to soften this outcome by noting that the judicial conscience must be shocked by inaction, it simply goes too far.  "Danger creation" becomes transformed into "danger created or permitted" and thus erodes the notion that "foreseeability cannot create an affirmative duty to protect when plaintiff remains unable to allege a custodial relationship."

*Gray*, 672 F.3d at 916 (quoting *Graham v. Indep. Sch. Dist. No. I-89*, 22 F.3d 991, 994 (10th Cir. 1994)).

Defendant School and Defendant Board object to Recommendation Three insofar as it permits Plaintiffs to go forward on their ADA and RA claims.  (ECF No. 171.)  The objection posits that Plaintiffs did not adequately allege that the denial of benefits to MAP was "by reason of [MAP's] disability."  (*Id*. at 3.)  These Defendants contend that there are insufficient allegations of a factual link between denial of benefits and MAP's disability in the Proposed Second Amended Complaint.

Reviewing the matter *de novo*, the Court disagrees.  As did the Magistrate Judge, I find that such matters were adequately alleged.  (*See* ECF No. 113-1 at ¶¶ 194, 196, 197, and 201.) The objection is overruled.

## IV. CONCLUSION

1.      Recommendations One, Two and Three are hereby ADOPTED and the objections to the respective recommendations are OVERRULED.

2.      The surviving claims in this lawsuit are the ADA, RA and Title IX claims against Defendant School and Defendant Board.

Dated this 29th day of July, 2014.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge